UNITED STATES of America,
Plaintiff,

v.

OSCEOLA COUNTY, FLORIDA and
Donna Bryant, Supervisor of
Elections, Defendants.

No. 6:05–cv–1053–Orl–31DAB.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 8, 2006.

Ralph E. Hopkins, U.S. Attorney's Office, Middle District of Florida, Orlando, FL, Rebecca J. Wertz, Timothy F. Mellett, U.S. Department of Justice, Civil Rights Division Voting Section, Washington, DC, for Plaintiff.

George H. Nickerson, Jr., Jo O. Thacker, Osceola County Attorney's Office, Kissimmee, FL, Sean M. Broderick, Vincent R. Fontana, Fontana & Broderick, LLP, Garden City, NY, Joshua Byrne Spector, Law Offices of Joshua Spector, P.A., Miami, FL, for Defendants.

## ORDER

PRESNELL, District Judge.

On October 18, 2006 this Court issued its Opinion finding that Defendants (collectively referred to herein as the County) had violated Section 2 of the Voting Rights Act. (Doc. 89). That Opinion ordered the parties to submit proposed remedial plans by November 22, 2006. A hearing on the remedial plans was held on December 7, 2006.

The County's remedial plan was legislatively enacted on November 13, 2006, following a public hearing, by adoption of Resolution No. 06–078(R). That plan proposed to increase the number of county commissioners from five to seven, with five

single-member districts and two at-large seats elected county-wide. The County proposes a special election to be held in the Spring of 2007, at which time two single-member district commissioners would be elected to four year terms: District 3 (the Hispanic majority district for which there would be no incumbent) and District 4 (in which Ken Smith is the incumbent). In addition, the two county-wide at-large seats would be elected—Group 1 for a four-year term and Group 2 for a two-year term.[1] The three commissioners elected in 2004, Messrs. Owen (District 1), Shipley (District 2) and Lane (District 5) would continue to serve the balance of their four-year terms.

The United States objected to the County's plan, contending that the only appropriate remedy is a five-member single district plan. The United States proposed two such plans with all five seats to be elected in the spring special election. The single-member district plans proposed by the United States were drawn based on 2000 Census data. Each plan contains a Hispanic majority district with no incumbent. The plans are compact and within the allowable ten percent deviation. Also, with minor necessary exceptions, both plans build districts using whole precincts. The only significant difference between the two plans is that plan 2 separates two incumbent commissioners—Messrs. Smith and Shipley.

For proportionality purposes, the County drew its districts using certificate of occupancy data to update the Census data. Notwithstanding the County's effort to refine that data, the Court concluded that 2000 Census data should be used for remedial purposes. (See this Court's Order at Doc. 96). On December 6, 2006, the parties stipulated to using the districts outlined in the United States' second remedial plan. (Doc. 97).[2] Therefore, the only remaining issue in dispute is whether the two additional at-large seats proposed by the County are consistent with the remedial purposes of the Act.

■ The County contends that its legislative plan is entitled to deference, and should be adopted unless it is in violation of the Act. *Wise v. Lipscomb*, 437 U.S. 535, 540, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978); *Tallahassee Branch of NAACP v. Leon County*, 827 F.2d 1436, 1438 (11th Cir. 1987). The United States, on the other hand, argues that this Court does not have the authority to approve the County's plan because it increases the size of the legislative body. The United States relies on a line of cases in the Eleventh Circuit stemming from the United States' Supreme Court's decision in *Holder v. Hall*, 512 U.S. 874, 114 S.Ct. 2581, 129 L.Ed.2d 687 (1994). None of those cases, however provide clear direction under the circumstances presented here.

In *Holder*, the Court held that a Section 2 challenge based on the size of a legislative body could not be successful, because the Court would have no guidance in choosing a benchmark against which to compare the current system. *Id.* at 881, 885, 114 S.Ct. 2581. *Holder* was about liability, not remedy. In this case, liability has already been determined, and was not based on the size of the Board.

The Eleventh Circuit first applied *Holder* in *Nipper v. Smith*, 39 F.3d 1494 (11th Cir.1994). In *Nipper*, the Court refused to find liability in a case in which all of Plaintiffs' comparison plans involved changes in the size of the governmental body. Again, the Court held that a liability challenge based on the size of the body could not be successful. The *Nipper* Court did state that, under *Holder*, "federal courts may

---

1. The variance in term-lengths is necessary to create staggered elections.

2. See County Resolution No. 06–092(R), dated December 6, 2006.

not *mandate* as a section 2 remedy that a state or political subdivision alter the size of its elected bodies." *Id* at 1532 (emphasis supplied). However, the holding does not necessarily preclude a court from *approving* a change in the size of the electoral body as part of a legislatively enacted Section 2 remedy.

Essentially, the line of cases cited by the United States stand firmly for the principal that judicially enacted plans, or even plans proposed by the parties, that increase the size of an elected body are impermissible. However, none of those cases address remedial plans that were enacted by a legislative body, as is the case here. Furthermore, none of them purport to overrule cases such as *Wise* and *Leon County* which support the principal of deference to legislative plans, even when they alter the size of elected bodies. Therefore, it appears that the law regarding whether district courts have the power to approve a legislatively enacted increase in the size of an elected body is unclear. However, this Court need not decide that issue, because, in this case, the County's 5–2 plan is not a full and adequate remedy and therefore cannot be approved in any case.

██ In Section 2 cases, it is clear that any remedy sanctioned by the Court must completely remedy "the prior dilution of minority voting strength and provide equal opportunity for minority citizens to participate and to elect candidates of their choice." *White v. Alabama,* 74 F.3d 1058, 1069 (11th Cir.1996). While courts may not ensure or require that minorities receive proportional representation in any elected body, the equal opportunity to elect candidates is at the heart of the

Section 2. *Id.* at 1072. The County's plan, in effect, perpetuates the vote dilution that this case seeks to resolve.

Under the United States' plan, the Hispanic community would have a reasonable opportunity to elect one out of five members of the Board (20%). Under the County's plan, however, that opportunity is diluted to one out of seven (14%). Furthermore, the United States has presented evidence that, with a board of seven members, the Hispanic community should have an opportunity to elect two board members (28%), because if Osceola County were to be split into seven districts, a plan can be drawn in which two of those districts are majority Hispanic.[3] As this Court has already found, Hispanics in Osceola County have no reasonable opportunity to elect members in an at-large election. Therefore, given the high degree of historically polarized voting, the extra two at large seats are completely out of the reach of the Hispanic community. The County's plan results in an unequal opportunity for Hispanics to elect members of the Board, and therefore, is not a full and adequate remedy to the Section 2 violation.

Finally, the United States' agreed in open court to the implementation of the schedule and pre-registration plan proposed by the County. Thus, this Court approves the United States' Proposed Remedial Plan 2,[4] as well as the County's proposed electoral schedule and preregistration proposal.[5]

---

**3.** In fact, in the seven district model, there is a third district that is 46% Hispanic, and therefore Hispanics would have an opportunity to substantially influence the election of three members of the Board.

**4.** A five single-member district plan, using the map contained in the stipulation. (Doc. 97 at 7).

**5.** Outlined in the calendar attached to the County's Proposed Remedial Plan. (Doc 92 at 37–42).